**Nos. 21-55175 & 21-55759 (consolidated)**

IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
———————

JEREMY VAUGHN PINSON,
*Petitioner-Appellant*,

v.

MICHAEL CARVAJAL,
*Respondent-Appellee.*
———————

On Appeal from the United States District Court
for the Central District of California, No. 5:20-cv-02599-PSG-SP
Honorable Philip S. Gutierrez
———————

BRUCE R. SANDS, JR.,
*Petitioner-Appellant*,

v.

UNITED STATES OF AMERICA,
*Respondent-Appellee.*
———————

On Appeal from the United States District Court
for the Central District of California, No. 2:21-cv-01114-JVS-JEM
Honorable James V. Selna
———————

## APPELLANTS' CONSOLIDATED OPENING BRIEF
———————

CUAUHTEMOC ORTEGA
FEDERAL PUBLIC DEFENDER
 CENTRAL DISTRICT OF CALIFORNIA
BRIANNA MIRCHEFF
ANDREW B. TALAI
DEPUTY FEDERAL PUBLIC DEFENDERS
321 East 2nd Street
Los Angeles, California 90012
(213) 894-7571
Andrew_Talai@fd.org

*Counsel for Petitioners-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

STATEMENT OF THE ISSUES .............................................................3

STATUTORY PROVISIONS INVOLVED ..............................................3

STATEMENT OF THE CASE ................................................................4

    I.    The *Pinson* Appeal ................................................................4

        A.    Jurisdiction, Timeliness, and Bail Status .....................4

        B.    Facts and Proceedings Below .......................................5

                1.    Pinson is convicted and sentenced to 252 months in federal prison .....................................5

                2.    Pinson files a pro se habeas petition seeking release or home confinement ...............................6

                3.    The district court summarily dismisses Pinson's pro se habeas petition for lack of jurisdiction ...........................................................7

    II.    The *Sands* Appeal ..............................................................10

        A.    Jurisdiction, Timeliness, and Bail Status ..................10

        B.    Facts and Proceedings Below .....................................10

                1.    Sands is convicted and sentenced to 135 months in federal prison ...................................10

                2.    Sands files a pro se habeas petition seeking immediate release from custody .........................11

                3.    The district court dismisses Sands' pro se habeas petition for lack of jurisdiction ..............13

i

SUMMARY OF THE ARGUMENT ......................................................... 14

STANDARD OF REVIEW .................................................................... 17

ARGUMENT ......................................................................................... 17

I.    The District Courts Erred in Dismissing Appellants'
Habeas Petitions for Lack of Jurisdiction ........................... 17

    A.    Federal prisoners can challenge the "manner,
location, or conditions" of the execution of their
sentences under 28 U.S.C. § 2241 .............................. 18

    B.    In any event, Appellants' claims are at the "core
of habeas" and thus cognizable under 28 U.S.C.
§ 2241 .......................................................................... 24

    C.    At a minimum, the district courts should have
converted Appellants' habeas petitions into civil
rights complaints .......................................................... 30

II.    Alternatively, the District Court Erred in Summarily
Dismissing Pinson's Habeas Petition ................................... 32

CONCLUSION ....................................................................................... 38

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM — STATUTORY PROVISIONS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Artuz,*
    221 F.3d 117 (2d Cir. 2000) ............................................................ 36

*Barden v. Keohane,*
    921 F.2d 476 (3d Cir. 1990) .............................................................. 9

*Bivens v. Six Unknown Named Agents of*
    *Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971) ............................................... 9, 24, 31

*Boyd v. Thompson,*
    147 F.3d 1124 (9th Cir. 1998) ................................................ 32, 33

*Brady v. U.S. Parole Comm'n,*
    600 F.2d 234 (9th Cir. 1979) ............................................................ 9

*Campbell v. Redding Med. Ctr.,*
    421 F.3d 817 (9th Cir. 2005) ............................................................ 4

*Close v. Thomas,*
    653 F.3d 970 (9th Cir. 2011) .......................................................... 21

*Coady v. Vaughn,*
    251 F.3d 480 (3d Cir. 2001) ............................................................ 19

*Cohen v. United States,*
    593 F.2d 766 (6th Cir. 1979) ............................................................ 9

*Crickon v. Thomas,*
    579 F.3d 978 (9th Cir. 2009) .......................................................... 21

*Day v. McDonough,*
    547 U.S. 198 (2006) ........................................................................ 36

*Doganiere v. United States,*
    914 F.2d 165 (9th Cir. 1990) .................................................. 20, 22

*Estelle v. Gamble,*
429 U.S. 97 (1976) ............................................................................ 29

*Goodman v. Keohane,*
663 F.2d 1044 (11th Cir. 1981) (per curiam) ...................................... 9

*Harrison v. Ollison,*
519 F.3d 952 (9th Cir. 2008) ............................................................ 18

*Haskell v. Harris,*
745 F.3d 1269 (9th Cir. 2014) (per curiam) ...................................... 30

*Hendricks v. Vasquez,*
908 F.2d 490 (9th Cir. 1990) ............................................................ 33

*Herbst v. Cook,*
260 F.3d 1039 (9th Cir. 2001) ................................................... *passim*

*Hernandez v. Campbell,*
204 F.3d 861 (9th Cir. 2000) (per curiam) ............................ 18, 22, 24

*Hope v. Warden York Cty. Prison,*
972 F.3d 310 (3d Cir. 2020) ............................................................ 26

*Ibrahim v. Dep't of Homeland Sec.,*
538 F.3d 1250 (9th Cir. 2008) .......................................................... 24

*Jiminian v. Nash,*
245 F.3d 144 (2d Cir. 2001) ............................................................ 20

*Laws v. Lamarque,*
351 F.3d 919 (9th Cir. 2003) ............................................................ 29

*Levine v. Apker,*
455 F.3d 71 (2d Cir. 2006) .............................................................. 19

*Lucky v. Calderon,*
86 F.3d 923 (9th Cir. 1996) ............................................................. 17

*Moore v. Winn,*
698 F. App'x 485 (9th Cir. 2017) ............................................... 20, 23

*Munaf v. Geren*,
 553 U.S. 674 (2008) ........................................................................ 25

*Nettles v. Grounds*,
 830 F.3d 922 (9th Cir. 2016) (en banc) ..................................... *passim*

*Preiser v. Rodriguez*,
 411 U.S. 475 (1973) .................................................................. 25, 28

*Rice v. Thompson*,
 No. 21-16200, 2021 WL 6103019
 (9th Cir. Dec. 22, 2021) (unpublished) ............................................. 21

*Richardson v. Bd. of Prison Hearings*,
 785 F. App'x 433 (9th Cir. 2019) ................................................. 31, 32

*Rodriguez v. Copenhaver*,
 823 F.3d 1238 (9th Cir. 2016) ......................................................... 21

*Roman v. Wolf*,
 977 F.3d 935 (9th Cir. 2020) ........................................................... 24

*Skinner v. Switzer*,
 562 U.S. 521 (2011) .................................................................. 25, 27

*Solida v. McKelvey*,
 820 F.3d 1090 (9th Cir. 2016) ......................................................... 24

*Spencer v. Haynes*,
 774 F.3d 467 (8th Cir. 2014) ........................................................... 31

*Sudduth v. Ariz. Att'y Gen.*,
 921 F.2d 206 (9th Cir. 1990) ............................................................. 5

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*,
 555 F.3d 772 (9th Cir. 2009) ........................................................... 37

*United States v. Pinson*,
 542 F.3d 822 (10th Cir. 2008) ........................................................ 5, 6

*United States v. Pinson*,
 594 F. App'x 517 (10th Cir. 2014) ...................................................... 6

*United States v. Sands,*
    719 F. App'x 634 (9th Cir. 2018) ........................................... 11

*Wilson v. Williams,*
    961 F.3d 829 (6th Cir. 2020) ............................. 26, 27, 28, 29

*Woodall v. Fed. Bureau of Prisons,*
    432 F.3d 235 (3d Cir. 2005) .............................................. 20

## Constitutional Provisions

U.S. Const. amend. VIII ................................................. *passim*

## Statutes

18 U.S.C. § 871(a) ............................................................ 5

18 U.S.C. § 876 ............................................................ 5, 6

18 U.S.C. § 1001(a)(2) ...................................................... 5

18 U.S.C. § 1341 ............................................................ 11

18 U.S.C. § 1343 ............................................................ 11

18 U.S.C. § 1957 ............................................................ 11

28 U.S.C. § 1291 ......................................................... 4, 10

28 U.S.C. § 2241 ..................................................... *passim*

28 U.S.C. § 2253(a) ..................................................... 4, 10

28 U.S.C. § 2254 .................................................... 22, 23, 25

28 U.S.C. § 2255 ...................................................... 18, 19

42 U.S.C. § 1983 ............................................... 22, 23, 24, 25

## Rules

C.D. Cal. L.R. 72-3.2 ....................................................... 33

Fed. R. App. P. 4(a)(1)(B) ............................................... 5, 10

Fed. R. App. P. 23(a) ................................................................. 9

Rules Governing Section 2254 Cases in the
    United States District Courts, Rule 4 ............................ 32, 33, 34, 35

## Other Authorities

3 William Blackstone, Commentaries on the
    Laws of England (1768) ...................................................... 25

Fed. Bureau of Prisons, *Find an Inmate* (last visited Feb. 18,
    2022), https://www.bop.gov/inmateloc/ ......................................... 5, 10

# INTRODUCTION

Jeremy Pinson and Bruce Sands (together, "Appellants") are federal prisoners who suffer from underlying medical conditions that increase their risk of severe illness or death from COVID-19.[1] Both filed a pro se habeas petition under 28 U.S.C. § 2241, alleging that continued incarceration during the pandemic violates the Eighth Amendment and seeking release from custody. In each case, the district court dismissed for lack of jurisdiction. Without addressing the merits, the courts determined that such claims cannot be considered in habeas because they challenge "conditions of confinement."

The district courts erred in dismissing on jurisdictional grounds. This Court has long instructed federal prisoners to mount challenges to the *execution*—in contrast with the *imposition*—of their sentences under § 2241. Because Appellants' claims concern the execution of their sentences (which encompasses challenges to unlawful "conditions"), the claims were properly brought in habeas. In any event, whatever the outer limit of § 2241 is for federal prisoners, it can be *no narrower* than

---

[1] Pinson is a transgender woman who uses the pronouns "she" and "her." This brief will refer to Pinson using the gender pronouns with which she identifies.

1

the "core of habeas." Appellants' claims, properly understood, fall within that core: they allege that under *no set of circumstances* could ongoing imprisonment during the COVID-19 pandemic satisfy the Eighth Amendment and therefore seek immediate *release from custody*. Regardless of whether Appellants will ultimately prevail on the merits of their claims, this Court should hold that habeas is available to federal prisoners who wish to challenge conditions that render continued confinement unconstitutional and that can be remedied only by release. At a minimum, even assuming Appellants' claims were not cognizable in habeas, the district courts should have recharacterized the petitions as civil rights complaints. When faced with an incorrectly styled pro se petition, federal courts must give due consideration to whether the pleadings are amenable to conversion. The district courts did not satisfy their obligations here.

For these reasons, the Court should reverse the district courts' dismissal orders and remand for further proceedings. If, however, the Court does not address the threshold jurisdictional issue for any reason, it should still conclude that the district court prematurely dismissed Pinson's habeas petition. Federal courts are required to provide notice

and an opportunity to respond before summarily dismissing a pro se petition on procedural grounds, but the district court failed to comply with that basic requirement of due process.

## STATEMENT OF THE ISSUES

1.  Whether the district courts erred in dismissing Appellants' habeas petitions for lack of jurisdiction under 28 U.S.C. § 2241, where the petitions: (a) challenged the execution (as opposed to the imposition) of Appellants' federal sentences; (b) asserted claims at the core of habeas (i.e., that no set of conditions would be constitutionally sufficient to permit ongoing confinement and sought immediate release from custody); and (c) could have been recharacterized as civil rights complaints or otherwise amended.

2.  Alternatively, whether the district court erred in summarily dismissing Pinson's pro se habeas petition, a mere four days after it was filed, where she was deprived of advanced notice of the purported basis for dismissal and an opportunity to respond.

## STATUTORY PROVISIONS INVOLVED

Pertinent statutory provisions are reproduced in an addendum to this brief.

3

## STATEMENT OF THE CASE

This appeal arises from two related cases. In *Pinson v. Carvajal*, No. 21-55175 (9th Cir.) ("*Pinson*"), and *Sands v. United States*, No. 21-55759 (9th Cir.) ("*Sands*"), two individuals serving federal sentences filed pro se habeas petitions under 28 U.S.C. § 2241. They alleged that ongoing incarceration during the COVID-19 pandemic violates the Eighth Amendment and sought release from custody. In both cases, the district court dismissed for lack of jurisdiction. On January 19, 2022, this Court consolidated the *Pinson* and *Sands* appeals for briefing and argument. *Pinson*, Dkt. 22; *Sands*, Dkt. 15.

## I. The *Pinson* Appeal

### A. Jurisdiction, Timeliness, and Bail Status

Pinson invoked the district court's subject-matter jurisdiction under 28 U.S.C. § 2241. Although the district court determined that it lacked jurisdiction, this Court still has appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). *Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 820 (9th Cir. 2005) ("We have jurisdiction to review the district court's dismissal for lack of subject matter jurisdiction.").

On December 18, 2020, the district court summarily dismissed Pinson's pro se habeas petition and entered judgment. ER-4–9. On

4

February 9, 2021, Pinson delivered her notice of appeal to prison authorities for mailing to the district court. ER-15. Thus, her notice of appeal was timely filed under Federal Rule of Appellate Procedure 4(a)(1)(B). *Sudduth v. Ariz. Att'y Gen.*, 921 F.2d 206, 207 (9th Cir. 1990) (holding that pro se prisoner's notice of appeal was "deemed filed when it was delivered to prison authorities for forwarding to the court").

Pinson is in custody. Her projected release date is September 8, 2026. Fed. Bureau of Prisons, *Find an Inmate* (last visited Feb. 18, 2022), https://www.bop.gov/inmateloc/.

## B.    Facts and Proceedings Below

### 1.    *Pinson is convicted and sentenced to 252 months in federal prison.*

Pinson is in federal custody serving a 252-month sentence that was imposed in three cases. In 2005, a jury in the Western District of Oklahoma found her guilty of threatening the President under 18 U.S.C. § 871(a) while she was already incarcerated at a state correctional facility. *United States v. Pinson*, 542 F.3d 822, 827 (10th Cir. 2008). In 2007, she also pleaded guilty to making a materially false statement under 18 U.S.C. § 1001(a)(2) and mailing a threatening communication under 18 U.S.C. § 876(c). *Pinson*, 542 F.3d at 827. After

a consolidated hearing, the district court sentenced Pinson to 240 months in prison. *Id.* at 827–29. The Tenth Circuit affirmed, though it had some "qualms" about the length of her sentence. *Id.* at 836.

Pinson committed a similar offense while incarcerated in a Texas detention center. In 2008, she pleaded guilty in the Southern District of Texas to mailing a threatening communication under 18 U.S.C. § 876. *United States v. Pinson*, 594 F. App'x 517, 518 (10th Cir. 2014). The district court sentenced her to 24 months in prison, half of which were to run concurrently with her earlier sentence. *United States v. Pinson*, No. 4:08-cr-00283, Doc. 50 at 2 (S.D. Tex. Dec. 12, 2008). Thus, in total, Pinson's sentence was extended to 252 months in prison.

### 2. *Pinson files a pro se habeas petition seeking release or home confinement.*

In December 2020, Pinson filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the Central District of California. ER-10–11. She alleged that, soon after being transferred to the U.S. Penitentiary in Victorville, California ("USP Victorville"), the facility experienced a COVID-19 outbreak. ER-11. Although she suffers from certain medical conditions that "elevate the lethal risk of COVID-19" (e.g., asthma and obesity), Pinson claimed that she was not

6

screened for COVID-19, was not provided with personal protective equipment, could not sanitize her hands, and could not practice social distancing. *Id.* She believed her life was in "grave danger." *Id.*

Based on these allegations, and as relevant here, Pinson asserted a claim for violation of the Eighth Amendment against the Director of the Federal Bureau of Prisons ("BOP"). ER-10. She sought the following remedies: (1) "release or home confinement" to protect her from COVID-19, given that her "continued incarceration violates the 8th Amendment"; (2) an injunction ordering the BOP Director to take certain measures to protect inmates at USP Victorville from COVID-19; and (3) emergency adjudication of her petition. ER-11.

### 3. *The district court summarily dismisses Pinson's pro se habeas petition for lack of jurisdiction.*

The district court summarily dismissed Pinson's habeas petition four days later. ER-5–9. The court determined that it lacked jurisdiction under § 2241 because "habeas corpus is the appropriate remedy for a prisoner challenging the 'fact or duration' of his or her physical imprisonment," but not the "conditions of confinement." ER-7.

7

The district court believed there was a lack of controlling authority on the issue. It stated that the Supreme Court has expressly "left open" the question of whether inmates can challenge their confinement conditions in habeas, while the Ninth Circuit has "yet to consider the issue." ER-7. It noted, however, that other "courts of appeals have extended habeas relief to cover certain challenges to conditions of confinement" related to the COVID-19 pandemic. *Id.* The district court ultimately opted to follow a line of non-binding decisions from other lower courts within this Circuit, finding that "such challenges . . . [are] outside the scope of federal habeas relief." ER-7–8 (citing cases). Although judges within the Central District of California and around the Circuit had split on the issue, the court stated there was "no reason to deviate" from its chosen line of cases. ER-8.

The district court also recognized that the primary remedy Pinson sought was "release from custody." ER-8. Still, the court found it determinative that she did "not contest the legality of her conviction or sentence," and instead premised her claims on "what she believes are unconstitutional conditions of confinement." *Id.* The court therefore dismissed Pinson's petition, though it was without prejudice to filing a

civil rights complaint under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[2]

The district court issued its dismissal order sua sponte, without giving Pinson notice of, or an opportunity to respond to, the purported jurisdictional defect. ER-9. The court entered judgment the same day. ER-4. Although the record does not disclose the precise date, it appears that Pinson was transferred to the U.S. Penitentiary, Coleman II, in Sumterville, Florida. ER-14.[3]

---

[2] Pinson later filed a pro se civil rights complaint, but the district court denied her request to proceed without prepayment of filing fees and dismissed the case. *Pinson v. Martinez*, No. 5:21-cv-00610-PSG-SP, Doc. 4 at 1 (C.D. Cal. Apr. 29, 2021).

[3] Pinson's transfer does not divest this Court of jurisdiction. Federal Rule of Appellate Procedure 23(a) prohibits transferring a prisoner from one facility to another, without prior authorization, "[p]ending review of a decision in a habeas corpus proceeding." Fed. R. App. P. 23(a). This rule was intended to "alleviate jurisdictional problems sometimes created by geographical limits on habeas corpus jurisdiction." *Brady v. U.S. Parole Comm'n*, 600 F.2d 234, 236 (9th Cir. 1979). And to implement its purpose, several circuits have held that transfer in violation of Rule 23(a) does not divest the reviewing court of subject-matter jurisdiction. *E.g.*, *Barden v. Keohane*, 921 F.2d 476, 477 n.1 (3d Cir. 1990); *Goodman v. Keohane*, 663 F.2d 1044, 1047 (11th Cir. 1981) (per curiam); *Cohen v. United States*, 593 F.2d 766, 767 n.2 (6th Cir. 1979). There is no indication in the record of an application for leave to transfer Pinson outside the territorial jurisdiction under Rule 23(a). That transfer therefore cannot prevent this Court from "retaining jurisdiction" and "reviewing the district court's dismissal of h[er] habeas petition." *See Goodman*, 663 F.2d at 1047.

II.    The *Sands* Appeal

*Sands* involves the same primary legal issue on similar facts. The following statement of the case thus parallels the preceding discussion.

A.    **Jurisdiction, Timeliness, and Bail Status**

Sands invoked the district court's subject-matter jurisdiction under 28 U.S.C. § 2241. Although the district court determined that it lacked jurisdiction, this Court still has appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). *See supra* at p. 4.

On July 6, 2021, the district court dismissed Sands' pro se habeas petition and entered judgment. ER-19–21. On July 15, 2021, Sands filed a timely notice of appeal under Federal Rule of Appellate Procedure 4(a)(1)(B). ER-84–85.

Sands is in custody. His projected release date is September 29, 2026. Fed. Bureau of Prisons, *Find an Inmate* (last visited Feb. 18, 2022), https://www.bop.gov/inmateloc/.

B.    **Facts and Proceedings Below**

1.    ***Sands is convicted and sentenced to 135 months in federal prison.***

A grand jury in the Central District of California returned an indictment against Sands, which charged him with engaging in a

10

scheme to defraud investors related to the sale of precious metals. ER-50–51. In 2016, he pleaded guilty to three counts of mail fraud under 18 U.S.C. § 1341; five counts of wire fraud under 18 U.S.C. § 1343; and two counts of transactional money laundering under 18 U.S.C. § 1957. ER-51. The district court sentenced him to 135 months in prison, and this Court affirmed in relevant part. *United States v. Sands*, 719 F. App'x 634, 635 (9th Cir. 2018).

### 2. *Sands files a pro se habeas petition seeking immediate release from custody.*

Sands is incarcerated at the Federal Correctional Institution in Lompoc, California ("FCI Lompoc"). ER-76. In January 2021, he petitioned for a writ of habeas corpus under 28 U.S.C. § 2241 in the Central District of California. ER-75–80. He suffers from various medical conditions that increase his risk of severe illness or death from COVID-19 (e.g., hypertension and obesity), and claimed that prison officials were deliberately indifferent to his serious medical needs. ER-77–78, 80. Among other things, he alleged that prison officials: (1) ignored his need for medical care; (2) failed to implement official policies and guidance related to the COVID-19 pandemic; (3) failed to reduce the inmate population at FCI Lompoc to prevent the spread of

COVID-19; (4) failed to adequately test inmates for COVID-19; and

(5) failed to adequately isolate inmates who had tested positive for

COVID-19. *Id.*

Based on these allegations, Sands asserted claims for violation of

the Eighth Amendment against FCI Lompoc's warden. ER-75, 77–78,

80. He expressly challenged the "[f]act or duration" of his confinement

on the ground that "no set of conditions" would be constitutionally

sufficient to justify his continued incarceration during the COVID-19

pandemic. ER-76. As an exclusive remedy, he sought "[i]mmediate

release from custody." *Id.*

The warden moved to dismiss. ER-47–58. As relevant here, she

maintained that the district court lacked jurisdiction under § 2241

because Sands was not challenging his underlying "criminal conviction

or sentence." ER-49. According to the warden, the petition focused on

mere "conditions of confinement," i.e., "limitations on FCI Lompoc's

ability to take certain precautions in response to the COVID-19

pandemic." ER-53–54. And in her view, habeas corpus did not provide a

remedy for such conditions-of-confinement claims. ER-54.

Sands filed a pro se opposition. ER-38–43. He disputed the warden's depiction of his claims as protesting ordinary conditions of daily life at FCI Lompoc. ER-40. Sands reiterated that his petition challenged the "fact or duration of . . . confinement" itself, and if proven, his claims could be remedied only through "immediate release from prison." ER-40–41. Sands argued that such a claim was within the "core of habeas corpus." ER-41.

### 3. *The district court dismisses Sands' pro se habeas petition for lack of jurisdiction.*

The magistrate judge recommended dismissal with prejudice. ER-33–37. He recognized that Sands alleged "no set of conditions . . . could be constitutional" and sought "immediate release from . . . custody." ER-34. Still, the magistrate judge described Sands' petition as merely challenging "the conditions of confinement implemented during the COVID-19 pandemic," such as the failure to institute "social distancing measures" and "reduce[] the inmate population." ER-35. According to the magistrate judge, "a [§] 2241 petition may be utilized by a federal inmate to challenge the manner, location, or conditions of a sentence's execution," but "is not the proper vehicle to challenge the conditions of confinement." ER-34. He thus concluded that the "request for relief

13

exceeds the [c]ourt's jurisdiction," and without explanation, declined to "construe the [p]etition as a civil rights complaint.'" ER-35.

Sands filed a pro se objection to the magistrate judge's report and recommendation. ER-22–30. He maintained that jurisdiction was proper under § 2241 and urged the district court to deny the warden's motion to dismiss. *Id.* Ultimately, however, the court accepted the magistrate judge's findings and recommendation, dismissed Sands' petition with prejudice, and entered judgment. ER-19–21.

## SUMMARY OF THE ARGUMENT

Appellants are federal prisoners suffering from medical conditions that increase their risk of severe illness or death from COVID-19. They filed pro se habeas petitions under 28 U.S.C. § 2241, alleging that their ongoing incarceration violates the Eighth Amendment and seeking immediate release from custody. The district courts dismissed their petitions outright, and in doing so committed reversible error.

I. The districts court erred in dismissing Appellants' habeas petitions for lack of jurisdiction under § 2241. The orders should be reversed and the cases remanded for further proceedings.

A. This Court has long held that federal prisoners are required to mount challenges to "the manner, location, or *conditions* of a sentence's execution" under § 2241. And it has routinely exercised review over such claims, even when the petitioner was not attacking the validity of her underlying conviction or sentence and regardless of whether the claims were at the "core of habeas." Because Appellants' claims concern the execution of their sentences, which plainly encompasses challenges to unlawful "conditions," habeas jurisdiction was proper. This Court's subsequent decisions have not disturbed that longstanding rule.

B. In any event, to resolve these appeals, the Court need not define the outer limit of habeas corpus for federal prisoners. However the boundaries are drawn, the right to relief under § 2241 can be *no narrower* than the "core of habeas." Appellants' claims pass muster under that standard and are therefore cognizable. The allegation here is that *no set of conditions* would be constitutionally sufficient to permit continued imprisonment during the COVID-19 pandemic, and for that reason, Appellants seek *release from custody*. Such a claim lies at the heart of habeas corpus. Indeed, under similar circumstances, other

circuits have held that federal prisoners' claims should be understood as challenging the "fact or duration" of confinement.

C. Even if Appellants' claims were not cognizable in habeas, the district courts should have converted the petitions into civil rights complaints. A pro se petitioner who uses the wrong procedural vehicle may have her pleading construed as a civil rights complaint, after receiving notice and giving informed consent. In *Pinson* the district court failed to expressly address whether recharacterization was possible or advantageous; in *Sands* the magistrate judge failed to provide any justification for his decision to refuse conversion and then dismissed with prejudice. In all events, the proper course is remand.

II. Alternatively, if the Court declines to address the threshold jurisdictional issue for any reason, it should still reverse the district court's dismissal order in *Pinson*. The court erred in summarily dismissing Pinson's pro se petition, without complying with various procedures designed to protect pro se litigants. It was not "plainly apparent" that the district court lacked jurisdiction under the relevant authorities; the court failed to provide Pinson (who was then self-represented) with advanced notice and an opportunity to respond to the

purported defect; and the court disregarded its duty to "make clear" the procedural error at issue and the "consequences for failing to respond."

## STANDARD OF REVIEW

This Court generally reviews a district court's denial of a habeas petition de novo. *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc). The same standard applies to a dismissal for lack of jurisdiction. *Id.*; *Lucky v. Calderon*, 86 F.3d 923, 925 (9th Cir. 1996) (reviewing summary dismissal for lack of jurisdiction de novo).

## ARGUMENT

### I.   The District Courts Erred in Dismissing Appellants' Habeas Petitions for Lack of Jurisdiction.

The district courts wrongly dismissed for lack of jurisdiction under 28 U.S.C. § 2241. First, under this Court's precedents, Appellants were required to bring any challenges to the execution of their sentences (including claims related to unlawful "conditions") in habeas. Second, whatever the outer limit of § 2241 is for federal prisoners, it can be no narrower than the "core of habeas." Appellants meet that standard here because they challenge the "fact or duration" of confinement itself and seek "release from custody." Third, even if Appellants' claims were not

17

cognizable in habeas, the district courts should have converted the petitions into civil rights complaints.

### A. Federal prisoners can challenge the "manner, location, or conditions" of the execution of their sentences under 28 U.S.C. § 2241.

In both *Pinson* and *Sands*, the district court concluded that it lacked jurisdiction because the petitioner could not properly challenge "conditions of confinement" through a § 2241 petition. ER-7 (district court stating that habeas is not an appropriate "vehicle to challenge conditions of confinement"); ER-34 (magistrate judge stating that "[§] 2241 . . . is not the proper vehicle to challenge . . . conditions of confinement"). That was incorrect.

This Court has long instructed federal prisoners to bring their "conditions" claims under § 2241. "[M]otions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or *conditions* of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000) (per curiam) (emphasis added); *see also Harrison v. Ollison*, 519 F.3d 952, 956 (9th Cir. 2008) (same).

18

This distinction is grounded in the text of the relevant statutes. Generally, federal courts have power to grant writs of habeas corpus to all prisoners "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3). An application for such relief must be filed in the district of confinement. *Id.* § 2241(a). But for those in federal custody, a *more specific* provision governs challenges to the underlying validity of a sentence. Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct her sentence because it was "imposed in violation of the Constitution or laws of the United States," "the court was without jurisdiction to impose such sentence," "the sentence was in excess of the maximum authorized by law," or it is "otherwise subject to collateral attack." Such relief may only be granted by the sentencing court. *Id.* § 2255(a).

Given the intersection between these two provisions, courts have explained that § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001); *see also Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) ("This distinction between sentence validity and sentence execution is grounded in the

plain language of the more specific statute, § 2255, which does not recognize challenges to the manner of carrying out a prisoner's sentence.").

Put another way, a federal prisoner is permitted to challenge the *execution* of her sentence—as opposed to its *imposition*—under § 2241. *Doganiere v. United States*, 914 F.2d 165, 169 (9th Cir. 1990) (drawing distinction between "impos[ition]" and "execution" of federal sentence). And the execution of a sentence includes things like "the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and *prison conditions.*" *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (emphasis added); *see also Moore v. Winn*, 698 F. App'x 485, 486 (9th Cir. 2017) (concluding that, under *Hernandez*, an individual in federal custody could properly challenge the "*conditions of his confinement* through a [§ 2241] habeas petition" (emphasis added)). This is consonant with an ordinary understanding of the term "execution," which means to "put into effect" or "carry out." *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 243 (3d Cir. 2005) (quoting Webster's Third New Int'l Dictionary 794 (1993)).

Consistent with the foregoing principles, this Court has routinely heard § 2241 petitions filed by federal prisoners challenging only the execution of their sentences. For example, in *Rodriguez v. Copenhaver*, 823 F.3d 1238 (9th Cir. 2016), the Court reviewed a challenge to BOP's denial of a discretionary designation of state prison for service of a federal sentence. *Id.* at 1239–40. In *Close v. Thomas*, 653 F.3d 970 (9th Cir. 2011), the Court reviewed a challenge to BOP's criteria for ranking federal prisoners on a wait list for a discretionary drug treatment program. *Id.* at 973–74. And in *Crickon v. Thomas*, 579 F.3d 978 (9th Cir. 2009), the Court reviewed a challenge to BOP's determination that a federal prisoner was ineligible for an early release incentive program. *Id.* at 982; *see also Rice v. Thompson*, No. 21-16200, 2021 WL 6103019, at *1 (9th Cir. Dec. 22, 2021) (unpublished) (concluding that federal prisoner's challenge to "increase [in] monthly restitution payments" was "properly raised in a § 2241 habeas petition"). In none of those cases was the petitioner contesting the underlying validity of a conviction or sentence, nor was the claim necessarily within the "core of habeas," yet in each instance the Court exercised jurisdiction.

Thus, given that Appellants' claims go to the execution of their federal sentences (which includes challenges to unlawful "conditions"), habeas jurisdiction was proper. The district courts' contrary rulings were erroneous and should be reversed. In *Pinson*, the court overlooked *Hernandez* entirely and rested its decision on the mistaken view that § 2241 petitions must "contest the legality of [a] conviction or sentence." ER-8. In *Sands*, although the magistrate judge identified *Hernandez*, his decision was premised on an artificial and atextual distinction between "conditions of a sentence's execution" and "conditions of confinement." ER-34. The analysis, in both cases, was at odds with the plain text of the relevant statutes and this Court's longstanding precedents. *See Hernandez*, 204 F.3d at 864 (instructing federal prisoners to assert "conditions" claims under § 2241); *Doganiere*, 914 F.2d at 169 (distinguishing between claims challenging the *imposition* and *execution* of a federal sentence).

This Court's decision in *Nettles* is not to the contrary. In that case, the Court was concerned with delineating the scope of two statutory remedies available to *state* prisoners: 28 U.S.C. § 2254 and 42 U.S.C. § 1983. *Nettles*, 830 F.3d at 927. It held that a § 2254 habeas petition is

"the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas," while a § 1983 civil rights complaint is "the exclusive vehicle for claims brought by state prisoners that are not within the core of habeas corpus." *Id.* Importantly, however, the Court expressly stated that it "need not address how the standard . . . adopted here applies to relief sought by prisoners in federal custody." *Id.* at 931; *see also Moore*, 698 F. App'x at 486 (concluding that *Nettles* only "restricts the scope of habeas jurisdiction for *state* prisoners"). Put simply, *Nettles* says nothing about the scope of habeas relief for federal prisoners and therefore does not displace this Court's prior precedent.

Moreover, *Nettles* own reasoning suggests that § 2241 should remain open for federal inmates to challenge the execution of their sentences (including challenges to unlawful "conditions"). As just explained, *Nettles* was driven by a concern for defining the scope of coexisting *statutory* remedies afforded to state prisoners (i.e., § 2254 and § 1983). 830 F.3d at 927–31. But as the dissent correctly pointed out, "there is no alternative *statutory* remedy for federal prisoners, and so no possibility of *statutory* overlap." *Id.* at 946 (Berzon, J., dissenting) (emphases added). That is because § 1983 provides relief only against

23

persons acting "under color of" state law. 42 U.S.C. § 1983; *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008).

*Bivens* is no substitute, either. Although the Supreme Court created an implied cause of action for constitutional violations by federal officers in *Bivens*, 403 U.S. at 397, that remedy is not coextensive with § 1983. Indeed, a *Bivens* suit can provide (at most) an opportunity to obtain money damages from individual-capacity defendants. *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) ("By definition, *Bivens* suits are individual capacity suits and thus cannot enjoin official government action."). And while federal prisoners may be able to seek equitable relief against official-capacity defendants, that, too, is an implied cause of action arising under the Constitution. *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (describing "an implied cause of action . . . challeng[ing] allegedly unconstitutional conditions of confinement"). Thus, neither avenue of relief for federal prisoners implicates the statutory concerns articulated in *Nettles*.

## B. In any event, Appellants' claims are at the "core of habeas" and thus cognizable under 28 U.S.C. § 2241.

Because Appellants contend that *Hernandez* controls here (*supra* at pp. 18–24), the Court does not need to define the outer limits of

24

habeas jurisdiction for federal prisoners to resolve these appeals. As explained in more detail below, whatever the proper scope of § 2241 is for federal prisoners, it can be *no narrower* than the "core of habeas." And Appellants' claims plainly meet that standard.

Habeas is "a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is . . . release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also* 3 William Blackstone, Commentaries on the Laws of England 137 (1768) (explaining that the traditional remedy in habeas is "removing the injury of unjust and illegal confinement"). A prisoner's claim is thus at the "heart of habeas corpus" when it challenges "the fact or duration of his physical confinement itself" and seeks "immediate release or a speedier release from that confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973); *see also Skinner v. Switzer*, 562 U.S. 521, 525 (2011) ("Habeas is the exclusive remedy . . . for the prisoner who seeks 'immediate or speedier release' from confinement."). In *Nettles*, the Court used this insight to draw a line between § 2254 and § 1983 for state prisoners. 830 F.3d at 936 (holding that a state prisoner's claim falls within "the core of habeas" when it "necessarily lead[s] to his immediate or earlier release from

confinement"). And while there is good reason to think federal prisoners should have a broader right to relief under § 2241 (*supra* at pp. 22–24), there is no reason to think that it should somehow be narrower.

Indeed, thus far, two circuits have squarely held that certain challenges related to the COVID-19 pandemic are cognizable in habeas. *E.g.*, *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 324–25 (3d Cir. 2020) ("Given the extraordinary circumstances that existed in March 2020 because of the COVID-19 pandemic, we are satisfied that [petitioners'] § 2241 claim seeking only release on the basis that unconstitutional confinement conditions require it is not improper."); *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020) ("To the extent petitioners argue the alleged unconstitutional conditions of their confinement can be remedied only by release, 28 U.S.C. § 2241 conferred upon the district court jurisdiction to consider the petition.").

The Sixth Circuit's decision in *Wilson* is illustrative. In that case, a group of prisoners at the Elkton Federal Correctional Institution ("FCI Elkton") filed a § 2241 petition seeking "release from custody" to limit their exposure to COVID-19. 961 F.3d at 832–33. The prisoners claimed that their continued confinement during the pandemic violates

the Eighth Amendment, alleged there was "no set of internal protocols or practices" that the BOP could use to prevent further disease and death within the facility, and sought "release" for all older and medically vulnerable prisoners. *Id.* at 835; *see also id.* at 837–38 (describing federal prisoners' claim that "there are no conditions of confinement sufficient to prevent irreparable constitutional injury at [FCI] Elkton," and that they accordingly sought "release" from custody).

Based on those allegations, the Sixth Circuit held that jurisdiction was proper. *Wilson*, 961 F.3d at 837 (finding that prisoners' claims were "properly brought under § 2241 because they challenge the fact or extent of their confinement by seeking release from custody"). The court of appeals explained that "release from confinement . . . is 'the heart of habeas corpus,'" *id.* at 838 (quoting *Preiser*, 411 U.S. at 498), and a petitioner's claim that "no set of conditions would be constitutionally sufficient" is best understood as "challenging the fact or extent, rather than the conditions, of the confinement," *id.* Thus, because the prisoners alleged that "the constitutional violations occurring at [FCI] Elkton as a result of the pandemic can be remedied only by release," their claims were cognizable under § 2241. *Id.*; *see also Skinner*, 562

27

U.S. at 534 (suggesting that habeas should be available where the "the relief sought would . . . terminat[e] custody, accelerat[e] the future date of release from custody, []or reduc[e] the level of custody").

Appellants' habeas petitions both fit the bill. Sands alleges that, because of his medical vulnerability and the risks posed by COVID-19, there is "no set of conditions" under which he can be constitutionally confined and thus seeks "[i]mmediate release from custody." ER-76. Put another way, Sands claims that the basic fact of his incarceration during the COVID-19 pandemic, itself, violates the Eighth Amendment and *nothing* can be done to make the conditions constitutional from within the prison walls. That allegation sets his claim apart from ordinary challenges to daily conditions of prison life: no internal reforms would abate the ongoing constitutional violation, only the traditional remedy of release will suffice. *See Wilson*, 961 F.3d at 838. Thus, Sands' challenge is "just as close to the core of habeas corpus as an attack on the [underlying] conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks . . . immediate release from that confinement." *See Preiser*, 411 U.S. at 489.

Liberally construed, Pinson's habeas petition seeks the same or similar relief. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (explaining that a "handwritten pro se document is to be liberally construed," and "must be held to 'less stringent standards than formal pleadings drafted by lawyers'"); *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) ("We must construe *pro se* habeas filings liberally."). She alleged that her "continued incarceration" during the COVID-19 pandemic violates the Eighth Amendment and therefore sought "release" from custody or placement on "home confinement." ER-11. Indeed, even the district court acknowledged that she was "primarily seek[ing] release from custody" to avoid life-threatening exposure to the virus that causes COVID-19. ER-8. Thus, just like Sands and the federal prisoners in *Wilson*, Pinson's petition was at "the heart of habeas corpus." *See* 961 F.3d at 838.

\*     \*     \*

Because Appellants challenge the "execution" of their sentences and, in any event, their claims are at the "core of habeas" (*see supra* at pp. 22, 28–29), jurisdiction was proper under § 2241. In both cases, however, the district courts reflexively and erroneously dismissed the

petitions for lack of jurisdiction. ER-6–8, 34–35. At that early stage in the proceedings, there was no opportunity to litigate or consider any pertinent substantive issues. Rather than address any new arguments for the first time on appeal, this Court should remand to permit consideration of Appellants' claims on the merits. *See Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014) (per curiam) ("[W]e are a court of review, not first view.").

### C. At a minimum, the district courts should have converted Appellants' habeas petitions into civil rights complaints.

Even if this Court concludes that the district courts lacked jurisdiction under § 2241, it should still remand. There is no dispute that, had Appellants styled their pleadings as civil rights complaints, the district courts would have been able to exercise subject-matter jurisdiction. ER-7–8, 34–35. Rather than dismissing outright, the lower courts should have recharacterized or otherwise permitted amendment of the pleadings.

In *Nettles*, after concluding that the petitioner's claims were not cognizable, this Court explained that "a district court may construe a petition for habeas corpus to plead a [civil rights] cause of action

. . . after notifying and obtaining informed consent from the prisoner." 830 F.3d at 936; *see also Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014) (remanding for district court to provide federal prisoner with opportunity to pursue civil rights actions). Thus, "[i]f the complaint is amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the *pro se* litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint." *Nettles*, 830 F.3d at 936; *see also Richardson v. Bd. of Prison Hearings*, 785 F. App'x 433, 434 (9th Cir. 2019) ("When faced with an improperly styled habeas petition, the district court must still consider whether the claims are amenable to being converted to a [civil rights] complaint.").

None of that analysis occurred here. In *Pinson*, the district court dismissed without prejudice to refiling the petition as a *Bivens* action. ER-8. But the court failed to address whether recharacterization was possible or advantageous, and it seems to have mistakenly assumed that Pinson's remedies were limited to monetary damages from individual-capacity defendants. In *Sands*, the magistrate judge declined

31

to convert the petition into a civil rights complaint and dismissed *with prejudice*. ER-35. He offered no justification for that decision, let alone a reason to believe that he considered the pros and cons of conversion as required by *Nettles*. *See Richardson*, 785 F. App'x at 435 (reversing and remanding where district court "did not consider the question of conversion . . . [i]n accordance with *Nettles*").

## II. Alternatively, the District Court Erred in Summarily Dismissing Pinson's Habeas Petition.

As explained above (*supra* at pp. 17–32), the district court erred in dismissing Appellants' habeas petitions for lack of jurisdiction. This Court should therefore reverse the district courts' orders and remand for further proceedings. If, for any reason, the Court is not inclined to address that threshold jurisdictional issue in *Pinson*, it should reverse for another reason: the district failed give Pinson notice and an opportunity to respond before summarily dismissing her petition.

District courts are expected to take "an active role in summarily disposing of facially defective habeas petitions." *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998). Under the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), "[i]f it plainly appears from the petition and any attached exhibits that the

petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Habeas Rule 4; *see also* C.D. Cal. L.R. 72-3.2.

But the power to summarily dismiss a habeas petition "is not without limits." *Boyd*, 147 F.3d at 1128. As this Court has explained, summary dismissal is typically reserved for cases "where the allegations in the petition are 'vague or conclusory' or 'palpably incredible' or 'patently frivolous or false.'" *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990) (internal citations and brackets omitted). It can also be used for certain procedural defects that are "obvious on the face of the petition." *Boyd*, 147 F.3d at 1127–28 (procedural default); *see also Herbst v. Cook*, 260 F.3d 1039, 1042 (9th Cir. 2001) (untimeliness). At the same time, district courts must give habeas petitioners prior "notice" of the procedural defect and "an opportunity to respond to the argument for dismissal." *Boyd*, 147 F.3d at 1128. And when dealing with a self-represented litigant, the court must further "make clear" the procedural defect and "the consequences for failing to respond." *Id.*

This Court has reversed the summary dismissal of a habeas petition for contravening these limitations. In *Herbst*, a pro se petitioner sought relief from his state-court sentence based on ineffective assistance of counsel. 260 F.3d at 1041. The district court reviewed the operative petition, and within mere weeks, issued a sua sponte order dismissing for failure to comply with the statute of limitations. *Id.* at 1041–42. In reversing, this Court held that the petitioner was "entitled to adequate notice and an opportunity to respond *prior to* the district court's *sua sponte* dismissal of his petition." *Id.* at 1043. The court should have, at least, "inform[ed] Herbst that his petition would be subject to dismissal unless he could plead facts which prevented the statute of limitations from running against him." *Id.*

The district court committed a similar error here. Citing Habeas Rule 4, the court summarily dismissed Pinson's petition because it purportedly lacked jurisdiction under 28 U.S.C. § 2241. ER-7–8. But there was nothing "obvious" about that conclusion. *See Herbst*, 260 F.3d at 1042. The district court itself said that the Supreme Court "left open" the question of whether prisons can use § 2241 to challenge confinement conditions and recognized that lower courts were split. ER-7. In fact,

other circuits had "extended habeas relief to cover certain challenges to conditions of confinement" related to the COVID-19 pandemic. *Id.*; *see also supra* at pp. 26–28. Rather than grapple with the division of authority on this legal question, the district court simply opted to follow a line of non-binding decisions from other lower courts within this Circuit. ER-8. But that does not make the alleged defect "plainly app[arent]" for purposes of Habeas Rule 4.

Worse still, the district court issued its sua sponte dismissal order and entered judgment a mere four days after Pinson filed her petition. ER-4–9. As this Court has repeatedly explained, a district court should exercise its summary dismissal power "only . . . *after* [it] provides the petitioner with adequate notice and an opportunity to respond." *Herbst*, 260 F.3d at 1043 (emphasis added). The court could have complied with that requirement by, for example, issuing an order to show cause and directing Pinson to explain why she was entitled to the relief she sought or how she might otherwise amend her petition to state a cognizable claim. *See Id.* And since Pinson was proceeding pro se, the court needed to take extra care before dismissing her petition: it also should have made clear the procedural defect and the "consequences for failing to

35

respond." *Id.* But it failed to do anything of the sort. The court's premature dismissal order should therefore be reversed.

It makes no difference that the district court characterized the procedural defect here as "jurisdiction[al]." ER-8. Even if the court had an obligation to raise the issue sua sponte, it still should have given Pinson notice and an opportunity to respond. *Herbst*'s rule is derived from a core principle of due process: "[A] person is entitled to notice *before adverse judicial action is taken against him.*" 260 F.3d at 1043 (quoting *Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000)). And that principle is particularly important when, as is often the case in habeas proceedings, the court's summary order is based on no more than the initial pleading of "an unlearned and unskilled *pro se* petitioner." *Acosta*, 221 F.3d at 125. Thus, "[u]nless it is unmistakably clear that the court lacks jurisdiction," the court should not "dismiss without affording a [petitioner] the opportunity to be heard in opposition." *Id.*; *see also Day v. McDonough*, 547 U.S. 198, 210 (2006) ("[B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions.").

36

Nor was Pinson required to seek reconsideration or relief from judgment. For three practical reasons, "a motion for reconsideration is inadequate as an opportunity to respond" in this context. *Herbst*, 260 F.3d at 1044. First, the petitioner must clear a high bar to obtain reconsideration or relief from judgment. *Id.* (citing Fed. R. Civ. P. 59(e), 60(b)). Second, the standard of review on appeal from the denial of a motion for reconsideration or relief from judgment is far too deferential. *Id.*; *see also United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) ("A denial of a motion for reconsideration under Rule 59(e) is construed as one denying relief under Rule 60(b) and neither will be reversed absent an abuse of discretion."). And third, a petitioner cannot raise the "merits of the underlying judgment" on appeal from the denial of a motion for reconsideration or relief from judgment. *Herbst*, 260 F.3d at 1044. Thus, reversal is warranted here.

## CONCLUSION

For the foregoing reasons, the district courts' dismissal orders should be reversed and the cases should be remanded for further proceedings.

Dated: February 18, 2022     Respectfully submitted,

CUAUHTEMOC ORTEGA
FEDERAL PUBLIC DEFENDER

By: /s/ *Andrew B. Talai*
    Brianna Mircheff
    Andrew B. Talai
    Deputy Federal Public Defenders

    *Counsel for Petitioners-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 21-55175 & 21-55759 (consolidated)

The undersigned attorney or self-represented party states the following:

(●) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | /s/ Andrew B. Talai | **Date** | Feb 18, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**        *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 21-55175 & 21-55759 (consolidated) |

I am the attorney or self-represented party.

**This brief contains** | 7,379 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated |    |.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Andrew B. Talai | **Date** | Feb 18, 2022 |
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**          *Rev. 12/01/2018*

**ADDENDUM**

STATUTORY PROVISIONS INVOLVED

# TABLE OF CONTENTS

**Page**

**Statutes**

28 U.S.C. § 2241......................................................................1a

28 U.S.C. § 2254......................................................................3a

28 U.S.C. § 2255......................................................................6a

42 U.S.C. § 1983......................................................................8a

United States Code Annotated
    Title 28. Judiciary and Judicial Procedure (Refs & Annos)
        Part VI. Particular Proceedings
            Chapter 153. Habeas Corpus (Refs & Annos)

28 U.S.C.A. § 2241

§ 2241. Power to grant writ

Effective: January 28, 2008
Currentness

**(a)** Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

**(b)** The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it.

**(c)** The writ of habeas corpus shall not extend to a prisoner unless--

  **(1)** He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

  **(2)** He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

  **(3)** He is in custody in violation of the Constitution or laws or treaties of the United States; or

  **(4)** He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

  **(5)** It is necessary to bring him into court to testify or for trial.

**(d)** Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.

Addendum 1a

**(e)(1)** No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

**(2)** Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

## CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 964; May 24, 1949, c. 139, § 112, 63 Stat. 105; Pub.L. 89-590, Sept. 19, 1966, 80 Stat. 811; Pub.L. 109-148, Div. A, Title X, § 1005(e)(1), Dec. 30, 2005, 119 Stat. 2741; Pub.L. 109-163, Div. A, Title XIV, § 1405(e)(1), Jan. 6, 2006, 119 Stat. 3477; Pub.L. 109-366, § 7(a), Oct. 17, 2006, 120 Stat. 2635; Pub.L. 110-181, Div. A, Title X, § 1063(f), Jan. 28, 2008, 122 Stat. 323.)

28 U.S.C.A. § 2241, 28 USCA § 2241
Current through P.L. 117-80.

                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Addendum 2a

United States Code Annotated
    Title 28. Judiciary and Judicial Procedure (Refs & Annos)
        Part VI. Particular Proceedings
            Chapter 153. Habeas Corpus (Refs & Annos)

28 U.S.C.A. § 2254

§ 2254. State custody; remedies in Federal courts [Statutory Text & Notes of Decisions subdivisions I to XIV]

Effective: April 24, 1996
Currentness

<Notes of Decisions for 28 USCA § 2254 are displayed in multiple documents.>

**(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

**(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

  **(A)** the applicant has exhausted the remedies available in the courts of the State; or

  **(B)(i)** there is an absence of available State corrective process; or

  **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

**(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

**(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

Addendum 3a

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

**(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

**(A)** the claim relies on--

**(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

**(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and

**(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

**(f)** If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

**(g)** A copy of the official records of the State court, duly certified by the clerk of such court to be a true and correct copy of a finding, judicial opinion, or other reliable written indicia showing such a factual determination by the State court shall be admissible in the Federal court proceeding.

**(h)** Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel for an applicant who is or becomes financially unable to afford counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

Addendum 4a

**(i)** The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 967; Pub.L. 89-711, § 2, Nov. 2, 1966, 80 Stat. 1105; Pub.L. 104-132, Title I, § 104, Apr. 24, 1996, 110 Stat. 1218.)

28 U.S.C.A. § 2254, 28 USCA § 2254
Current through P.L. 117-80.

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Addendum 5a

United States Code Annotated
   Title 28. Judiciary and Judicial Procedure (Refs & Annos)
      Part VI. Particular Proceedings
         Chapter 153. Habeas Corpus (Refs & Annos)

28 U.S.C.A. § 2255

§ 2255. Federal custody; remedies on motion attacking sentence

Effective: January 7, 2008
Currentness

**(a)** A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

**(b)** Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

**(c)** A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

**(d)** An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

**(e)** An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

**(f)** A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

  **(1)** the date on which the judgment of conviction becomes final;

  **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

Addendum 6a

**(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

**(g)** Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

**(h)** A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain--

**(1)** newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

**(2)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

### CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 967; May 24, 1949, c. 139, § 114, 63 Stat. 105; Pub.L. 104-132, Title I, § 105, Apr. 24, 1996, 110 Stat. 1220; Pub.L. 110-177, Title V, § 511, Jan. 7, 2008, 121 Stat. 2545.)

28 U.S.C.A. § 2255, 28 USCA § 2255
Current through P.L. 117-80.

End of Document                           © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.    2

Addendum 7a

United States Code Annotated
  Title 42. The Public Health and Welfare
    Chapter 21. Civil Rights (Refs & Annos)
      Subchapter I. Generally

42 U.S.C.A. § 1983

§ 1983. Civil action for deprivation of rights [Statutory Text & Notes of Decisions subdivisions I to IX]

Effective: October 19, 1996
Currentness

<Notes of Decisions for 42 USCA § 1983 are displayed in multiple documents.>

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**CREDIT(S)**

(R.S. § 1979; Pub.L. 96-170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub.L. 104-317, Title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853.)

42 U.S.C.A. § 1983, 42 USCA § 1983
Current through P.L. 117-80.

End of Document                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Addendum 8a